UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 5:21-CR-75-DCR-MAS |
| WILLIAM R. HARGIS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant's Motion to Suppress and Motion for a *Franks* Hearing.  [DE 38].  The district judge referred this matter to the undersigned for a Report and Recommendation.  The United States responded to the Motion.  [DE 60].  The matter is ripe for decision.  For the reasons stated herein, the Court recommends the District Court deny Defendant's Motion to Suppress.

## I.      FACTUAL BACKGROUND

Defendant William R. Hargis ("Hargis") moves the Court to suppress evidence found in unit #1002 of an office building at 1795 Alysheba Way, Lexington, Kentucky.  The search was pursuant to a search warrant signed by Fayette County, Kentucky, District Court Judge Joseph T. Bouvier.  An affidavit made by Lexington Police Detective Brandon Hazelwood supported the purported probable cause challenged in Hargis's motion.  As set forth in Det. Hazelwood's affidavit [in the record at DE 39-1 and 60-1], the facts supporting the search warrant can be summarized as follows:

In April 2021, Det. Hazelwood received information from a Qualified Confidential Informant (QCI) who stated an individual known as "Youngin" was trafficking large amounts of heroin and/or fentanyl.  In the next few weeks, Det. Hazelwood met the QCI and they arranged a controlled buy of narcotics from "Youngin."  Continuous surveillance by the officers observed the QCI engage in a controlled buy of narcotics with a subject driving a Silver Dodge Ram truck, who the QCI represented to be "Youngin."  Eventually, Det. Hazelwood was able to confirm that "Youngin" is an individual named Lamonte Brown ("Brown").

Law enforcement consequently undertook surveillance of Brown.  Law enforcement observed Brown interact with an unknown subject operating a Toyota Camry.  Law enforcement effectuated a vehicle stop on the Camry and determined the driver was Tiquan Anderson ("Anderson").  A narcotics canine positively alerted to the odor of narcotics in the vehicle, at which point Anderson fled on foot.  Officers apprehended Anderson shortly thereafter.  A search of Anderson's vehicle yielded approximately 1 pound of methamphetamine, cocaine, marijuana, a digital scale, plastic bags, and $2,000 in cash.

Anderson initially told law enforcement that the drugs were not his and he was borrowing the vehicle.  Eventually, Anderson confessed that he had obtained the narcotics from Lamonte Brown, stated he could purchase kilo quantities of narcotics from Brown, and that Brown and his associates used 1795 Alysheba Way #1002 as a narcotics stash house.  Anderson provided a description of the building and the key pad lock on the unit door, which was verified by law enforcement, where he said he had observed Brown and an individual named "Mitch" packaging, cutting, and storing narcotics. Anderson advised there was approximately 40 kilos of narcotics placed in the ceiling of the office.

Thereafter, Det. Hazelwood observed Anderson place a FaceTime call to Brown, during which Anderson requested to purchase three kilos of heroin from Brown. Anderson told Det. Hazelwood that if Brown needed to pick up that quantity of heroin, he would obtain it from the stash location at 1795 Alysheba Way #1002. Officers conducting surveillance at the office building after the phone call was made observed a silver Dodge Ram truck, consistent with the vehicle they had previously observed "Youngin"/Brown driving, enter the parking lot of the building at 1795 Alysheba Way. The truck slowly drove by the building, circled detectives, and then left the parking lot.

Based on all of this information, Judge Bouvier signed a search warrant for the office at 1795 Alysheba Way #1002. A search of that location revealed a very large quantity of narcotics as well as indicia of trafficking, such as scales, baggies, and a blender.

## II.    ANALYSIS

Hargis argues that the affidavit does not establish probable cause because Anderson's statements were not reliable or corroborated, that Det. Hazelwood made material omissions in the affidavit necessitating a *Franks* hearing, and that the *Leon* good faith exception does not apply. The Court will take each of these arguments in turn.

### A.    THE EVIDENCE WAS SUFFICIENT TO SUPPORT A FINDING OF PROBABLE CAUSE.

"Probable cause supports a search warrant when the affidavit demonstrates 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Powell*, 847 F.3d 760, 769 (6th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The "review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit . . ." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citations omitted). *United States v. Coffee*, 434 F.3d 887, 892 (6th

Cir. 2006).  "Nevertheless, when considering that information, we look to the totality of the circumstances."  *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009).

Hargis, relying on *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009), argues that because the affidavit does not state that Anderson was known to law enforcement to be a reliable informant, the affiant had to attest to significant corroboration of Anderson's assertions.  Hargis claims such corroboration was not present in this case.  The United States responds in agreement that corroboration of Anderson's statements was necessary for a finding of probable cause, but that there was ample corroboration for such a finding here.  The Court agrees with the United States.

In *Higgins*, the named informant claimed to have purchased narcotics from Higgins's apartment the preceding day.  557 F.3d at 389-90.  Confirming that Higgins resided at the named apartment and that his motorcycle was parked outside of the apartment, law enforcement obtained a search warrant for the apartment. The Sixth Circuit found that the affidavit "did not assert that the informant had been inside Higgins's apartment, that he had ever seen drugs or other evidence inside Higgins's apartment, or that he had seen any evidence of a crime other than the one that occurred when Higgins allegedly sold him drugs. Without such an assertion, the affidavit fails to establish the necessary 'nexus between the place to be searched and the evidence sought.'"  *Id*. at 390 (internal citation omitted).[1]

*Higgins* presents a situation that is in direct opposition to the one before the Court.  If anything, the contrast between the *Higgins* facts and those present here confirm the strength of the probable cause in the instant search warrant affidavit.  "[A]n affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under

---

[1] The Court notes that the *Higgins* Court found that the good-faith exception to the exclusionary rule applied nonetheless.

the totality of the circumstances, **if it includes sufficient corroborating information**.*" United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) (emphasis added).  In this case, the affidavit sets forth numerous independently corroborated facts that match and verify Anderson's statements.  As the United States points out, law enforcement's investigation revealed the following facts that corroborated Anderson's statements:

- Lamonte Brown sold narcotics to the QCI.

- Law enforcement observed Brown with Anderson just prior to a traffic stop where officers discovered methamphetamine in Anderson's vehicle.  Anderson stated he had just obtained the narcotics from Brown.

- The office building at 1795 Alysheba Way #1002 and door/key pad matched Anderson's description.

- Anderson ordered drugs via a FaceTime call with Brown while law enforcement observed the call.

- Soon after the FaceTime call, a silver Dodge Ram, consistent with the vehicle Brown was known to utilize, arrived at 1795 Alysheba Way #1002, which was where Anderson said Brown would go to retrieve the drugs he ordered via FaceTime.

Additionally, unlike in *Higgins*, Anderson stated he had been inside 1795 Alysheba Way #1002 and had observed Brown and another individual packaging, cutting, and storing narcotics at that location.  Of course, Anderson had incentive to cooperate with law enforcement after being caught with methamphetamine in his vehicle.  That incentive does not render the numerous specific, corroborated details Anderson provided meaningless.

"[T]he question is whether the instant affidavit, which contains little basis for the state court judge to assess independently the informant's credibility, otherwise includes sufficient corroboration that the state court judge could determine, under the totality of the circumstances, that probable cause existed." *Woosley*, at 927 (6th Cir. 2004); *See also Illinois v. Gates*, 462 U.S. 213 (1983).  Applying this totality-of-the-circumstances test, the Court finds there was sufficient

evidence from the QCI, Anderson, surveillance, and the observed FaceTime call for the state court judge to find probable cause existed to authorize a search of 1795 Alysheba Way #1002.[2]

## B.   THE *LEON* GOOD FAITH EXCEPTION APPLIES IN ANY EVENT

If, for any reason, a reviewing court finds that the search warrant was legally deficient, the Court finds that the *Leon* good faith exception to the warrant requirement applies.  The *Leon* good faith exception permits the admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective."  *United States v. Leon*, 468 U.S. 897, 905 (1984).  "[C]ourts will not exclude evidence when the costs of suppression outweigh the benefits of deterrence, such as when reasonable officers rely on a magistrate's warrant in good faith. . . . That exception comes with an exception of its own.  An officer 'cannot reasonably presume' that a 'facially deficient' warrant is valid."  *United States v. Harney*, 934 F.3d. 502 (6th Cir. 2019) (citing *United States v. Leon*, 468 U.S. 897, 919-21 (1984)).  The "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916.

Here, the Court has found there was no police or judicial misconduct in the issuance of the search warrant.

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.
>
> In short, where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would

---

[2] Hargis's motion stresses that "[t]he bulk of the affidavit had nothing to do with Mr. Hargis, who was not even named therein."  [DE 38-1 at Page ID # 176].  The question before the state judge was whether there was probable cause to believe fruits or evidence of a crime would be found in the place to be searched; not whether that evidence related to Hargis.  The fact that the affidavit does not name Hargis has no bearing on whether or not there was probable cause to support the search of 1795 Alysheba Way #1002.

6

and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.  In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.

*United States v. Leon*, 468 U.S. 897, 919–21 (1984).  The officers involved reasonably believed they had authorization from a neutral judicial officer, pursuant to a multiple-page search warrant detailing weeks of investigation, controlled buys by a qualified confidential informant, surveillance, a FaceTime call, and the statements of Anderson to conduct a search of 1795 Alysheba Way #1002.  Accordingly, the *Leon* exception to the exclusionary rule applies and the evidence found because of the search should not be suppressed.

C.    <u>**Hargis is Not Entitled to a *Franks* Hearing**</u>

Hargis claims he is entitled to a *Franks* hearing because Det. Hazelwood made material omissions in his Affidavit in support of the search warrant.  Namely, Hargis's request for a *Franks* hearing rests primarily on his claim that Det. Hazelwood omitted critical facts about Anderson's lengthy criminal history and credibility.  As detailed below, Hargis's argument falls well short.

The standard for a *Franks* hearing is unquestionably high.  A *Franks* hearing is appropriate

where the defendant makes a substantial preliminary showing that [1] a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).  "But *Franks* is generally inapplicable to such omissions, except where the affiant excluded critical information intentionally to mislead the magistrate judge."  *United States v. Alford*, 717 F.App'x 567, 570 (6th Cir. 2017).  The omission

must be "critical to the finding of probable cause." *United States v. Fisher*, 824 F.App'x 347, 353 (6th Cir. 2020). "[T]he standard to obtain a *Franks* hearing for a material omission is higher than a false statement and is only merited in rare cases." *United States v. Hampton*, 760 F.App'x 399, 404 (6th Cir. 2019).

Hargis argues that Anderson's credibility was "the lynchpin of a probable cause determination" and that Anderson's reliability was unknown to law enforcement. Hargis believes these facts completely undermines a finding of probable cause. [DE 38-1 at Page ID # 178]. The fact that Anderson had criminal history does not make his independently corroborated information unreliable, or the omission material. Anderson's criminal history and actions during the traffic stop do not rise to the level of "critical information," nor were they "critical to the finding of probable cause[,]" particularly in light of the substantial corroborating evidence. Even if Det. Hazelwood had included Anderson's criminal history and the circumstances of his traffic stop, the Court finds it would not have changed the probable cause determination. Thus, Hargis has not made a substantial primary showing that he is entitled to a *Franks* hearing on these omissions.

## III.    CONCLUSION

For reasons stated herein, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress [DE 38]. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Crim. P. 59(b), and local rule, within **fourteen** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 15th day of October.



Signed By:

**Matthew A. Stinnett**

**United States Magistrate Judge**