UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 21-075-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM R. HARGIS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant William Hargis filed a motion to suppress evidence seized based on a purported invalid search warrant. He has also requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). [Record No. 38] The matter was referred to United States Magistrate Judge Matthew Stinnett for the issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Stinnett issued his report, recommending that Hargis' motion be denied because the warrant was supported by probable cause. [Record No. 70] Hargis filed objections to the magistrate judge's recommendations, asserting that the findings regarding probable cause and good faith are clearly erroneous. [Record No. 73]

After considering the record, Magistrate Judge Stinnett's Report and Recommendation, and Hargis' objections, the Court will deny the motion to suppress because the warrant was supported by probable cause.

**I.**

On April 29, 2021, Lexington Police Department Detective Brandon Hazelwood received information from a Qualified Confidential Informant ("QCI") that a person known as

- 1 -

"Youngin" was trafficking large amounts of heroin and/or fentanyl. [Record No. 63-1, p. 2] According to the QCI, "Youngin" was a young, black male who drove a newer silver Dodge Ram pickup truck. [Id.] Detective Hazelwood explained that he met with the QCI to purchase narcotics from "Youngin." [Id. at 3.] The QCI told Detective Hazelwood that "Youngin" would be driving the silver Dodge Ram truck. [Id.] Detective Hazelwood gave the QCI buy money and instructed him on where to meet "Youngin". [Id.] The QCI conducted two controlled buys with "Youngin," and police observed a silver Dodge Ram truck at both pre-determined locations. [Id.] The QCI returned with narcotics he allegedly purchased from "Youngin" with the buy money. [Id.] The QCI later explained he thought "Youngin" was Lamonte Brown and was shown a picture of Brown who he positively identified as "Youngin." [Id.]

Detectives began conducting surveillance of Lamonte Brown. On May 11, 2021, Brown was observed interacting with another unidentified black male in a Toyota Camry. [Id. at 4] Officers made contact with the vehicle and the driver, Tiquan Anderson. [Id.] Anderson was removed from the vehicle, and a narcotics K-9 alerted to the odor of narcotics. [Id.] Anderson attempted to flee on foot but was apprehended and taken into custody. [Id.] Officers searched the vehicle and found approximately one pound of methamphetamine, one ounce of cocaine, individual bags of marijuana, a digital scale, plastic bags, and approximately $2,000.00 in cash. [Id.]

While initially speaking to law enforcement officers, Anderson denied that the drugs found in the Camry were his and he told officers that he just borrowed the vehicle. [Id.] However, he eventually admitted that he received the drugs from his cousin, Brown, and that he could purchase kilos of narcotics from Brown. [Id.] Anderson then informed detectives

that Brown and his associates stored narcotics in a building at 1795 Alysheba Way, and directed officers to Unit 1002. [*Id.*]  When speaking with detectives, Anderson provided a description of the building and the keypad lock on the unit door. [*Id.*] Anderson also informed detectives that he had been at 1795 Alysheba Way with an individual named "Mitch" the prior week and that there was approximately 40 kilos of narcotics in the ceiling. [*Id.*] Anderson told officers that he observed Brown and "Mitch" packaging, cutting, and storing narcotics. [*Id.*] Anderson then conducted a FaceTime call with Brown, while being watched by Detective Hazelwood, to secure 3 kilos of heroin. [*Id.*]  Anderson told the officers that if Brown needed to pick up the narcotics it would be from 1795 Alysheba Way. [*Id.*] Officers then observed a silver Dodge Ram truck, consistent with the truck Brown was known to drive, pull into the office parking lot, circle the detectives, and then leave. [*Id.*]

Based on the foregoing facts, Detective Hazelwood sought a search warrant for 1795 Alysheba Way, Lexington, Kentucky, which is a commercial townhouse-style building on May 12, 2021. [*Id.* at 1.]  The warrant was signed by Fayette County District Judge Joseph T. Bouvier.  Law enforcement officers searched 1795 Alysheba Way and found a large quantity of narcotics, including narcotics stored in the ceiling, and evidence of drug trafficking, including scales and baggies.

Hargis was indicted, along with Brown and Anderson, for (1) conspiring to distribute 50 grams or more of methamphetamine and 400 grams or more of a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. § 846; (2) knowingly and intentionally possessing with intent to distribute 500 grams or more of a mixture of substance containing methamphetamine and 400 grams or more of a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C § 841(a)(1); and (3) possessing a firearm

in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). [Record No. 21]

Hargis filed a motion to suppress, asserting that there was insufficient probable cause to justify the issuance of the search warrant for 1795 Alysheba Way. [Record No. 38] He contended that the affidavit supporting the search warrant did not provide sufficient corroboration that narcotics were being stored at 1795 Alysheba Way because the officer relied on an unreliable co-defendant's statements without attesting to his credibility or reliability. He also requested a *Franks* hearing, alleging that Detective Hazelwood made material omissions in the affidavit.

Magistrate Judge Stinnett concludes that the evidence included in the affidavit was sufficient to support a finding of probable cause. [Record No. 70, p. 3] The magistrate judge explained that the information provided by Anderson was independently corroborated by law enforcement. [*Id*. at 5.] Alternatively, he concludes that, if the search warrant was legally deficient, the *Leon* good faith exception would apply. [*Id*. at 6.] Finally, the magistrate judge concludes that a *Franks* hearing is unwarranted.

Hargis filed objections to Magistrate Judge Stinnett's report, asserting that his findings regarding probable cause and good faith are clearly erroneous. [Record No. 73] Hargis disagrees with the magistrate judge's conclusion that there was sufficient corroboration to determine that narcotics would be found at the location included in the search warrant. [*Id*.]

## II.

"The Fourth Amendment mandates that a search warrant may only be issued upon a showing of probable cause." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010); *United States v. Reed*, 993 F.3d 441, 446-47 (6th Cir. 2021). Probable cause exists when it

- 4 -

can be shown that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (citation omitted). Probable cause is determined based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. (cleaned up). In determining if there is sufficient evidence to support a finding of probable cause, the Court "is limited to the information presented in the four-corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

Generally, when relying on an information from an informant, the Court must consider "the veracity, reliability, and basis of knowledge of the informant's information." *United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012). However, "when a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." *United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002) (citation omitted). Additionally, when "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (citation omitted).

Hargis argues that nothing in Detective Hazelwood's affidavit said anything about him,[1] nor did it say anything about drugs being stored at 1795 Alysheba Way. [Record No.

---

[1] As Magistrate Judge Stinnett correctly explained, while the affidavit had nothing to do with Hargis this does not bear on whether there was probable cause to support the search of 1795 Alysheba Way. [Record No. 70, p. 6] The only question before the issuing magistrate was whether there was probable cause to believe that evidence of drug trafficking would be found

38-1, p. 1] He argues that Anderson -- the only person who linked drug activity to 1795 Alysheba Way -- only provided the information to detectives to avoid responsibility for his drug trafficking activities. [*Id*. at 2.] Hargis contends that the affidavit does not provide any information about Anderson's veracity or reliability. [*Id*. at 3.] And he asserts that there was no corroboration of the facts disclosed by Anderson.

The United States counters that there is more information that contributed to probable cause than just Anderson's statements. [Record No. 60, p. 7] It asserts that the statements made by Anderson were independently corroborated by the prior investigation, including the two controlled buys from Brown, the same vehicle being used during the two controlled buys, and surveillance placing Brown and Anderson together. Further, the United States argues that taking this information in conjunction with the statements by Anderson that there were narcotics at 1795 Alysheba Way, the FaceTime call between Anderson and Brown arranging for the buy of 3 kilos of heroin, and Anderson's statements that he had been at 1795 Alysheba Way when Brown and "Mitch" were cutting and packaging narcotics, is sufficient for finding probable cause.

Hargis relies on *United States v. Higgins* to support his argument that the search warrant is invalid because the affidavit does not attest to Anderson's reliability or veracity. 557 F.3d at 389-90. In *Higgins*, a named informant provided information that drugs would be found

---

at 1795 Alysheba Way, not whether there was evidence about Hargis at that location. "The critical element of a reasonable search is . . . that there is reasonable cause to believe specific things to be searched for and seized are located on the property to which entry is sought." *Frazier*, 423 F.3d at 532 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). Accordingly, Hargis' argument that nothing in the affidavit talked about him is irrelevant to determining whether there was probable cause to justify the issuance of a search warrant for 1795 Alysheba Way.

a certain location, but the affidavit including the named informant's statement did not include any information about the informant's reliability, nor did it provide any independent corroboration. *Id*. The United States Court of Appeals for the Sixth Circuit concluded that the warrant was not supported by probable cause because the informant gave statements after the police found drugs in his car, but there was no information that the informant was reliable, nor did the police corroborate any of the information except that Higgins lived at the address disclosed by the informant. *Id*. at 390. Further, the court explained that the affidavit did not include any information that the informant "had been inside Higgins's apartment, that he had ever seen drugs or other evidence inside Higgins's apartment, or that he had seen any evidence of a crime other than the one that occurred when Higgins allegedly sold him drugs." *Id*. While the court did conclude that the warrant was not supported by probable cause, it held that the good faith exception applied. *Id*. at 391.

Here, unlike in *Higgins* and contrary to Hargis' assertions, officers independently corroborated the facts included in the warrant. Separate from Anderson's statements, (i) law enforcement officers organized two controlled buys between Brown and a QCI, (ii) observed Anderson and Brown together right before officers stopped Anderson's vehicle, and (iii) watched Anderson FaceTime call Brown to order narcotics. [Record No. 63-1, p. 3-4] Further, and unlike *Higgins*, Anderson did assert that he had recently been inside 1795 Alysheba Way and explained that there were 40 kilos of narcotics in the ceiling. [*Id*. at 4.] He also told law enforcement that while at Alysheba Way, he witnessed Brown and "Mitch" packaging, cutting, and storing narcotics. [*Id*.] Additionally, officers verified that the basement office door and keypad lock at 1795 Alysheba Way matched Anderson's descriptions. [*Id*.] Finally, a silver Dodge Ram that was consistent with what law enforcement officers knew Brown drove, was

seen pulling into the parking lot at 1795 Alysheba Way, immediately after Anderson had FaceTime called Brown requesting narcotics and Anderson had told officers that Brown would need to go to 1795 Alysheba Way to pick up narcotics. [*Id.*]

The Court agrees with the magistrate judge in concluding that, while Anderson had an incentive to cooperate with law enforcement and the affidavit does not provide information about Anderson's veracity or reliability, there is sufficient corroboration to conclude that there was a fair probability that narcotics and instruments of drug trafficking would likely being found at 1795 Alysheba Way. The facts included in the affidavit provide a sufficient nexus between Alysheba Way and the likelihood that narcotics would be found at that location. *See United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998) (requiring that there be a sufficient "nexus between the place to be searched and the evidence sought"). Accordingly, the search warrant was supported by probable cause.[2]

### III.

---

[2] Alternatively, Magistrate Judge Stinnett recommended that the good faith exception to the warrant requirement applies. [Record No. 70, p. 6] The good faith exception allows evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective" to still be admitted. *Frazier*, 423 F.3d at 533. The exception does not apply in the following four circumstances:

> (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid.

*United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006). The undersigned agrees that, even if the warrant was not supported by probable cause, the good faith exception would apply. None of the four above-listed circumstances is relevant here.

Finally, Hargis requests a *Franks* hearing because he contends that Detective Hazelwood made material omissions in the affidavit supporting his request for a search warrant. Specifically, he asserts that Detective Hazelwood intentionally misled the magistrate judge by failing to include information about Anderson's lengthy criminal history and credibility.

"A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). To warrant a *Franks* hearing, the defendant must "make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit" and demonstrate "that the false statement or material omission is necessary to the probable cause finding in the affidavit." *Id*. When a defendant argues that omissions from an affidavit made a warrant improper, the defendant must show that "the affiant intended to mislead the judge by omitting information from the affidavit." *Hale v. Kart*, 396 F.3d 721, 726 (6th Cir. 2005).

"Indicia of an informant's credibility are certainly important in an affidavit, and the omission of known information regarding credibility can in some cases be misleading enough to be deemed a falsehood under *Franks*." *United States v. Jones*, 533 F. App'x 562, 568 (6th Cir. 2013). However, there is no specific requirement for what must be included in an affidavit to determine if an informant is credible. *Id*. Instead, the issuing magistrate judge must be "reasonably assured that the informant was credible and the information reliable." *United States v. Williams*, 224 F.3d 520, 532 (6th Cir. 2000).

In *Jones*, the defendant argued that the affidavit supporting the search warrant omitted information about the confidential informant's criminal history (including violent offenses),

his drug addiction, the fact that he was paid by law enforcement officers, and the suggestion that the informant may have been ingesting some of the drugs himself. *Jones*, 533 F. App'x at 568. He contended that the omissions caused the magistrate judge to not be able to properly evaluate the informant's credibility and undermined a finding of probable cause. *Id*. The Sixth Circuit concluded that the defendant had not made a "strong preliminary showing" to warrant a *Franks* hearing because there was other information in the affidavit that assured that the information from the informant was credible and the officer corroborated additional information. *Id*. at 568-69.

Similar to *Jones*, while the affidavit in this case did not include Anderson's criminal history, it disclosed that Anderson was found with drugs in his car, that he originally lied to police, and he tried to flee from law enforcement. This information could have been taken into account by the magistrate judge in determining whether Anderson was a credible informant. Further, the affidavit included information that was unrelated to the statements from Anderson that supported a finding of probable cause that drugs were being stored at 1795 Alysheba Way, like Brown selling drugs to a QCI and surveilling a silver Dodge Ram that was consistent with Brown's truck at 1795 Alysheba Way. Further, law enforcement officers corroborated parts of Anderson's statements, including matching the description of the door and keypad at 1795 Alysheba Way. The omission of Anderson's criminal history was neither necessary nor material to determining whether there was probable cause to conclude that narcotics would likely be found at 1795 Alysheba Way.

In short, there is absolutely no indication that Detective Hazelwood intentionally misled the magistrate judge and Hargis has not made a "strong preliminary showing" to warrant a *Franks* hearing.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The Report and Recommendation of United States Magistrate Judge Matthew Stinnett [Record No. 70] is **ADOPTED** and **INCORPORATED** here by reference.

2. Defendant Hargis' motion to suppress [Record No. 38] is **DENIED**.

3. Defendant Hargis' objections to the Report and Recommendation [Record No. 73] are **OVERRULED**.

4. Hargis' request for a *Franks* hearing is **DENIED**.

Dated: November 2, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky