Eastern District of Kentucky
FILED
APR 01 2022
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 21-CR-75-SS-DCR

UNITED STATES OF AMERICA     PLAINTIFF

V.     **CONDITIONAL PLEA AGREEMENT**

WILLIAM R. HARGIS     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter guilty pleas to Counts 1, 2, 4, and 5 of the Second Superseding Indictment. Count 1 charges a violation of 21 U.S.C. § 846 Conspiracy to Distribute 50 grams or more of actual methamphetamine, a Schedule II controlled substance, and Count 2 charges a violation of 21 U.S.C. § 841(a)(1) Possession with Intent to Distribute 50 grams or more of actual methamphetamine, a Schedule II controlled substance. The Defendant will also enter guilty pleas to Count 4, charging a violation of 18 U.S.C. § 924(c)(1) Possession of Firearms in Furtherance of Drug Trafficking Crimes and Count 5 charging a violation of 18 U.S.C. § 1956(h), Conspiracy to Commit Money Laundering Offenses. The Defendant will forfeit his claim to the assets listed in the Forfeiture Allegation. At the appropriate time the United States will move to dismiss the underlying indictments as they pertain to this Defendant. The United States will also move to dismiss Count 2 of Indictment 21-CR-046-SSS-DCR (and the underlying indictments related to 21-CR-046-

SSS-DCR) which charges a violation of 18 U.S.C. 1956 (h), Conspiracy to Commit Money Laundering Offenses as they pertain to this Defendant.

The Defendant reserves the right to appeal the District Court's denial of his Motion to Suppress [See R. 75, Memorandum Opinion and Order], specifically limited to the District Court's determination that there was sufficient probable cause for the issuance of the Search Warrant for the office area in the basement of the commercial structure at 1795 Alysheba Way Suite 1002. If the Defendant prevails on this appeal, he may then withdraw his guilty plea.

    2. The essential elements of Count 1 are:

        (a) that the Defendant did engage in an understanding or agreement to distribute 50 grams or more of actual methamphetamine, a Schedule II controlled substance,

        (b) that the Defendant knew the purpose of the agreement and voluntarily joined the conspiracy, and

        (c) that the amount is 50 grams or more of actual methamphetamine.

The essential elements of Count 2 are:

        (a) that the Defendant did possess with intent to distribute to another person, 50 grams or more of actual methamphetamine, a Schedule II controlled substance, and

        (b) that the Defendant did so knowingly and intentionally.

The essential elements of Count 4 are:

        (a) That the Defendant, committed the crimes charged in Count 1, that is the Conspiracy to Distribute 50 grams or more of actual methamphetamine, a Schedule II controlled Substance and Count 2 Possession with Intent to Distribute 50 grams of more of actual methamphetamine, a Schedule II controlled substance.

    (b) That the Defendant knowingly possessed firearms.

    (c) That the possession of the firearms was in furtherance of the crimes charged in Counts 1 and 2.

The essential elements of Count 5 are:

    (a) That the Defendant conducted or attempted to conduct a financial transaction(s),

    (b) That the financial transaction(s) involved property that represented the proceeds of drug trafficking crimes;

    (c) That the Defendant knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; and

    (d) That the Defendant had he intent to promote the carrying on of the drug crimes charged in Counts 1 and 2.

3. As to Counts 1, 2, 4, 5, and the Forfeiture Allegation, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

    a) In May 2021, members of the Lexington Police Department (LPD) were conducting a narcotics investigation into a group of individuals engaged in the distribution of crystal methamphetamine in Lexington, Fayette County, Kentucky in the Eastern District of Kentucky. LPD detectives received information from a cooperating source (CS), that co-defendant (Lamonte Brown hereinafter LB) was trafficking in large amounts of controlled substances. The CS provided a physical description of a subject who was operating a newer model, silver Dodge Ram pickup truck. Based on this information, LPD conducted surveillance on a cooperating witness (CW) who met with LB on more than one occasion to purchase a quantity of controlled substances. LB was driving the above described newer model Silver Dodge Ram truck.

    (b) On or about May 11, 2021, LB was under surveillance and was seen interacting with a subject (Tiquan Anderson, hereinafter TA). TA was observed going to a Dodge and exiting with a black bag. TA was subsequently observed

3

entering a black Toyota Camry and exiting the parking lot. A vehicle stop on the Camry revealed TA and a subsequent search of the Camry yielded approximately 1 pound of methamphetamine, cocaine, marijuana, a digital scale, plastic bags, and $2,000 in cash.

c)   Law enforcement obtained information that identified the Defendant as a drug supplier. Additional information was obtained that the Defendant and LB were storing, packaging and cutting narcotics at an office located in an office building on Alysheba Way in Lexington. The office was in the basement of the building and had an electronic keypad.

d)   LPD detectives determined the exact location of the office building and were escorted to the area. Upon arriving at that location on Alysheba Way, LPD detectives located suite 1002 in the basement which was the only door with an electronic keypad. LPD Det. Hazlewood entered the building and walked downstairs. Hazlewood located the described door and it was consistent with previous information as it was the only door with an electronic keypad.

e)   In preparation for the application of a state search warrant, surveillance was established in the area of Alysheba Way suite 1002. LPD detectives who were conducting surveillance at the office building observed the above described Silver Dodge Ram Truck conducting counter surveillance by pulling into the parking lot of the building. The Dodge Ram slowly drove by the building, circled detectives, and then left the parking lot. While conducting additional surveillance, LPD Detectives observed a black 2015 GMC Yukon arrive and observed the Defendant enter the common door of 1795 Alysheba Way. Detectives observed the Defendant exit the building a short time period later carrying what appeared to be a black bag. The Defendant placed what appeared to be a black bag in the back cargo area of the black GMC Yukon. The vehicle departed Alysheba and was followed away by LPD detectives.

f)   Thereafter, the Yukon entered the parking lot of the Target parking lot on Pavilion Way, Lexington, KY. Although LPD units lost visual sight of the Defendant's vehicle for a few moments, Target video surveillance was reviewed and showed the Defendant meet with a male subject operating a maroon Chevrolet Impala. Members of the LPD made contact with both vehicles and detained both occupants. The operator of the black 2015 GMC Yukon was the Defendant. A search of the Defendant produced approximately $5,000.00 in U.S. currency along with a key ring containing multiple keys.

g)   A state search warrant was obtained for the Alysheba Way, Unit 1002 and was subsequently executed by members of the LPD. During the search of the

office suite, detectives located more than 50 pounds of suspected methamphetamine. Additionally, approximately 2 pounds of suspected cocaine was located in the ceiling of the office space. The office space had been leased/purchased by the Defendant. Additional items located during the search of the office were four firearms, a Fed Arms FR99, Panser Arms AR12, Panther Arms AR pistol, AK-47 RML, along with numerous loaded magazines. The United States can prove that the above listed firearms were possessed and owned by the Defendant. Numerous items indicative of narcotics trafficking were also located including a hydraulic kilo style press, an illicit pill press, digital scales with residue, blenders with residue, and packaging material.

h)   The LPD, Forensic Service Unit (FSU) responded to the location and were able to retrieve a latent fingerprint from the hydraulic style kilo press. This item is commonly used by drug traffickers to reassemble cocaine and or other controlled substances after it has been mixed with a cutting agent to increase the volume for resale. The FSU detective was able confirm that the latent print lifted from the kilo press was a match for the known fingerprint of LB with a matching date of birth.

i)   Two keys located from the Defendant were confirmed to fit and access the lock on the door of unit 1002.

j)   The suspected methamphetamine was sent to the DEA lab and tested positive for 25.15 kilograms of actual methamphetamine. Methamphetamine is a Schedule II Controlled Substance. This amount is consistent with distribution as opposed to mere personal use.

k)   The Defendant admits that the United States can prove that he engaged in an agreement with the co-defendants and others to distribute over 50 grams of actual methamphetamine as well as prove that the office space of Suite 1002 was used to store, process and package crystal methamphetamine for distribution.

l)   On or about January 9, 2021, the Defendant did travel from the Eastern District of Kentucky with D.C. to the Southern District of Indiana casinos to engage in financial transactions by placing monetary bets to conceal and disguise that D.C. was the source of the monetary bets. D.C. had been banned from making these financial transactions (monetary bets) at the casinos. The Defendant did place monetary bets with cash that were in whole or in part with proceeds from the distribution of controlled substances.

m)   In addition to the conduct in the paragraph immediately above, the Defendant did engage in an agreement with others to engage in financial

5

transactions involving the proceeds from the distribution of controlled substances. Specifically, on March 1, 2021, a subject was encountered at the Northern Kentucky International Airport in possession of $55,992 in cash. The subject had engaged in an agreement with the Defendant to transport the cash to California to pay for a previous load of controlled substances and or to purchase additional amounts of controlled substances. The Defendant paid for the airplane flight for the subject and had rented a hotel room for the subject in California. The Defendant had agreed with the subject to pay him $5,000 to provide the subject with cash upon his successful return back to the EDKY.

n)  The Defendant admits that the United States could prove that he engaged in an agreement with others to engage in financial transactions to conceal and disguise the source of the funds and agrees that the United could prove that the Defendant engaged in an agreement with others to engage in financial transactions to promote the carrying on of the distribution of controlled substances.

4. The statutory punishment for Counts 1 and 2 is imprisonment for not less than 10 years, a fine of not more than $5,000,000 [handwritten: RW 10,000,000 AM WH], and a term of supervised release of not less than 5 years. The statutory punishment for Count 4 is imprisonment for not less than 5 years but not more than LIFE imprisonment, consecutive to the term of imprisonment for Counts 1 and 2, a fine of not more than $250,000, and a term of supervised release of not more than 5 years. The statutory punishment for Count 5 is imprisonment for not more than 20 years, a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, and not more than 3 years supervised release.

There is a mandatory special assessment of $100 per count that applies. The maximum punishment for the Forfeiture Allegations is forfeiture of the listed assets. A mandatory special assessment of $100 per count applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

6

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

   (a) United States Sentencing Guidelines (U.S.S.G.), August 2021 Manual, will determine the Defendant's guidelines range.

   (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct listed in paragraph 3 above as well as previously provided discovery. The parties agree that the amount of actual methamphetamine foreseeable to the Defendant is approximately 24 kilograms. This is a base offense level of 38.

   (c) Pursuant to U.S.S.G. § 2K2.4(b), the base offense level for Count 4 is 60 months, the "minimum term of imprisonment required by statute." The Defendant understands that the term of imprisonment under Count 4 must run consecutive to the term of imprisonment for Count 1.

   (d) Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), the base offense level is increased by 2 levels as Count 5 is a conviction under 18 U.S.C. § §1956(h).

   (e) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. With the exception of the Defendant's right to appeal the District Court's denial of his Motion to Suppress, the Defendant waives the right to appeal his guilty plea and conviction. The Defendant also reserves the right to appeal his final sentence.

Except for claims of ineffective assistance of counsel, the Defendant also further waives the right to attack collaterally his guilty plea and conviction.

8. The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the Indictment and will execute any documents necessary for this forfeiture. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense, as set out in the forfeiture allegation of the Indictment. Defendant waives any and all provisions set forth in Rule 32.2 regarding the timing of forfeiture orders.

9. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs

participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

10. The Defendant understands and agrees that pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

11. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

14. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
U.S. ATTORNEY

Date: 4/1/22     By: _____
                 Roger W. West
                 Assistant United States Attorney

Date: 4/2/22     _____
                 William R. Hargis
                 Defendant

Date: 4/1/22     _____
                 Hon. Abe Mashni
                 Attorney for Defendant