UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
Criminal No. 5:21-CR-75-DCR-MAS
*Electronically Filed*

UNITED STATES OF AMERICA                                                    PLAINTIFF

*vs*

WILLIAM HARGIS                                                              DEFENDANT

**SENTENCING MEMORANDUM AND MOTION FOR VARIANCE**

Comes now the Defendant, William Hargis (hereinafter "Mr. Hargis"), by and through undersigned counsel, and submits the following Sentencing Memorandum in support of his request for a sentence below the advisory guideline range.

**I.**

**INTRODUCTION**

Mr. Hargis is a 24-year-old young man who is facing a prison term that exceeds the length of time that he has been alive. That statement is made with full recognition of the extreme severity of the conduct he engaged in, and acceptance of the fact that he alone is responsible for where he stands. To be sure, the amount of methamphetamine that he was responsible for is rarely seen in the Eastern District of Kentucky, and the number of firearms possessed in furtherance of the offense exacerbates the trafficking offense greatly.

On the other hand, there are certain factors that will be discussed in this Memorandum that demonstrate that Mr. Hargis does not need to be incarcerated for life to accomplish the statutory sentencing objectives. First, Mr. Hargis has never been incarcerated for more than 56 days before his arrest in this case, and this case marks his first felony conviction. As the Court knows, most individuals

who are facing the amount of time that Mr. Hargis is looking at have served more than one lengthy term of incarceration and have failed to learn from the experience. Rarely does a first-time felon offender face a potential life sentence.

In the plea agreement, the parties agreed to non-binding guideline recommendations that would result in an offense level of 40, before a reduction for accepting of responsibility. The PSR recommended an offense level four (4) levels higher, adding two (2) points for a leadership role in connection to the money laundering count, and two (2) points for a "stash house" enhancement. While Mr. Hargis does not have a legal objection to these enhancements, it is worth noting that they increase his advisory guideline range from 262-327 to 360-life. In both scenarios, the 924(c) charge must run consecutive.

In this Memorandum, Mr. Hargis will show some mitigating circumstances and other factors that demonstrate that a guideline sentence is far more than necessary to satisfy 18 USC §3553 factors. He will discuss a history of abuse and unfortunate upbringing that partially explains, but does not excuse, how he got to this point in his life. Most importantly, he will also show that in similar cases throughout this country, sentences well below his advisory guidelines range have been deemed sufficient, but not greater than necessary, to accomplish the statutory sentencing factors. As a result of these factors and circumstances, Mr. Hargis will ask the Court to impose a sentencing below the guideline range.

## II.

## CIRCUMSTANCES OF THE OFFENSE

The circumstances of the offense are adequately laid out in paragraphs 7 through 18 of the United States Probation Officer's PSR.

## III.

## CIRCUMSTANCES OF THE OFFENDER

Mr. Hargis is a 24-year-old young man who has resided for the entirety of his life in the Eastern District of Kentucky. Mr. Hargis is the biological father of two children, a two-year-old boy, and a one-year-old daughter. He has also assumed the role of father to a four-year-old daughter. Mr. Hargis cherishes being a father more than anything in his life.

Although Mr. Hargis' childhood was anything but ideal, he maintains a strong relationship with his family. As seen in the attached letters, Mr. Hargis has a strong support system which he will undoubtedly need throughout his long prison sentence and the supervision that will follow.

Mr. Hargis' childhood was marred with traumatic event after traumatic event. He had an abusive father. *See Pre-Sentence Investigative Report Paragraph 59*. His mother struggled with addiction. *Id.* Both parents struggled to provide for his basic needs. *Id.* He was sexually abused. *Id.* He suffered from anxiety and depression. *Id. at Paragraph 61*. At one point, he was suicidal and needed professional in-patient treatment from The Ridge. *Id.* He moved dozens of times throughout his childhood. *Id. at Paragraph 59*.

While Mr. Hargis did challenge the government's case on two specific constitutional issues, the issue acceptance of responsibility was never in question. As the Government would attest to, there were extensive communications between the parties about the availability of conditional pleas, open pleas, and/or binding pleas. On April 1, 2022, Mr. Hargis entered a conditional guilty plea to one count of Conspiracy to Distribute 50 Grams or More of Actual Methamphetamine, Possession with Intent to Distribute 50 Grams or More of Actual Methamphetamine, Possession of a Firearm in Furtherance of Drug Trafficking Crime, and Conspiracy to Commit Money Laundering. Mr. Hargis is truly remorseful for the choices that he made, and the ripple affect they will have on his family.

**IV.**

## THE MULTITUDE OF MITIGATING FACTORS IN THIS CASE JUSTIFY A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE.

Counsel respectfully submits that unlike most federal cases, this case presents just one aggravating factor, the seriousness of the offense, juxtaposed against a myriad of mitigating factors. The starting point for considering these factors, of course, is 18 U.S.C. §3553(a), which states that the primary directive of sentencing is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph two." §3553(a)(2) states that such purposes are:

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to criminal conduct;

(c) To protect the public from further crimes of the defendant; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

As conceded above, Mr. Hargis accepted responsibility for a very serious offense, and a substantial prison sentence is necessary to promote respect for the law and to provide just punishment.

As the Court is aware, deterrence is both specific and general. With respect to deterring Mr. Hargis specifically, a below guideline sentence is sufficient when considering his previous lack of incarceration. District courts have varied downward in sentencing where a defendant, regardless of criminal history points, has not previously served a significant custodial term. *See, e.g., United States v. Collington,* 461 F.3d 805 (6th Cir. 2006) (upholding sixty-month downward variance in part because defendant had only been incarcerated for seven months prior to his crime, despite being in Criminal History Category IV). Prior to this offense, Mr. Hargis has not been incarcerated for any significant duration. Specifically, he had only served 56 days in custody, and that was for a misdemeanor offense. For someone who has never served a prison sentence, the enormous guideline range he is currently

facing – effectively 420 months to life, poses an absolute certainty of deterrence. Along the same lines, a below guideline sentence is more than sufficient to protect the public from further crimes of the defendant due to the sheer length of time Mr. Hargis will ultimately serve in prison.

As evidenced in his attached letter to the Court, Mr. Hargis is devastated by the impact that his decisions have had on his family and young children, and he is determined to prove that he can and will be a productive member of society. At 24-years-old, Mr. Hargis has put himself in the position, through his own decisions and actions, to face an advisory guideline range significantly longer than he has lived on this earth. Young or first-time offenders may also receive downward departures based on a low risk of recidivism. *See, e.g., United States v. Ross*, 557 F.3d 237 (5th Cir. 2009) (below-Guideline sentence was reasonable based on defendant's lack of criminal history, strong family support, and youth as mitigating factors, and a psychiatrist who had evaluated the defendant had testified that he had a low likelihood of recidivism); *United States v. Prisel*, 316 F. App'x 377 (6th Cir. 2008) (affirming district court's decision to very below the recommended Guideline range of twenty-seven to thirty-three months and sentence defendant to one day of imprisonment followed by three years of supervised released (including eighteen months of electronic home monitoring) on a charge of possession of child pornography were defendant was a one-time offender psychiatric testimony indicated his risk of recidivism was low); *United States v. Cabrera,* 567 F. Supp. 2d 271 (D. Mass. 2008) (granting variance of twenty-four months in part because defendant in drug sting was first time offender, and Sentencing Commission studies indicate recidivism rates in that group are extremely low).

As correctly noted in the PSR, William childhood was anything but ideal. A Court may consider a disadvantaged childhood or history of abuse as part of its analysis under 18 U.S.C. § 3553(a), and Courts have commonly varied downward where a defendant was victimized as a child. See *United States v. River*, 192 F.3d 81, 84 (2d Cir. 1999) ("It seems beyond question that abuse suffered during

5

childhood-at some level of severity-can impair a person's mental and emotional conditions); See also *United States v. Patzer*, 548 F. Supp. 2d 612 (N.D. I11. 2008) (imposing 13 years despite Guideline range of 346-411 months in career offender case, partly in consideration of defendant's difficult childhood with an abusive family and undiagnosed ADHD); See also *United States v. Ayers,* 971 F. Supp. 1197 (N.D. I11. 1997) (granting departure based upon cruel childhood with relentless physical, sexual, and psychological abuse over a course of years); See also *United States v. Mapp*, 2007 WL 485513 (E.D. Mich. Feb. 9, 2007) (granting variance based on defendant's upbringing where he frequently witnessed domestic violence and substance abuse by his parents until his grandmother took custody of him at age five); and See also *United States v. Samuels*, 2009 WL 875320 (S.D.N.Y. Apr. 2, 2009) (imposing time served sentence rather than Guideline range of seventy to eighty even months where defendant "was raised under poor economic circumstances with an abusive father addicted to crack").  Bullying, instability, sexual abuse, parents battling addiction issues, domestic violence, each individually would undoubtedly cause a significant negative impact on any child's life.  However, when combined, these factors are detrimental to development and mental health.  Mr. Hargis's childhood certainly meets both the level of a disadvantaged childhood and history of abuse.

As the Court is aware, a major sentencing objective is the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. §3553(a)(6).  Courts across the country have fashioned below guideline sentences for individuals in similar situations Mr. Hargis has found himself in.  According to United States Sentencing Commission Judiciary Sentencing Information (JSIN), during the last five years (2017-2021), there were 14 offenders whose primary guideline was §2D1.1 and Methamphetamine (Actual) was the primary drug type with a Final Offense Level of 41 and a Criminal History Category of III.  After excluding offenders who received §5K1.1 departure, the median length of imprisonment imposed was 240 months.  *See Attached Report.*

## V.

## CONCLUSION

After a traumatic and abusive upbringing, Mr. Hargis treasures being a father the most in life. It is undisputed that prior to his arrest, he was a loving and present father. However, he also wanted to provide a life financially that he never had. In his words, "As I got older and had kids, I only wanted to give them a better life than I had. I always felt like more money made everything better so that's what I focused on. Now I see it's not how much you give them but how much of you." This Memorandum has attempted to provide some context into Mr. Hargis's path and actions that brought him before this Honorable Court. Mr. Hargis is respectfully asking this Honorable Court to consider the previously mentioned factors when imposing a fair and just sentence.

Respectfully submitted,
BALDANI LAW GROUP

/s/ Abraham Mashni
Abraham Mashni
Russell Baldani
300 West Short Street
Lexington, KY 40507
859.259.0727
abe@baldanilaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been filed via CM/ECF, which will cause notice of the same to be served upon all parties on this the 8th day of July, 2022.

/s/ Abraham Mashni
Abraham Mashni
*Counsel for Defendant*